CHARLES C. KEEN, complainant and appellant,

*v.*

THE MAPLE SHADE LAND AND IMPROVEMENT COMPANY et al., defendants and respondents.

[Filed November 15th, 1901.]

1. Under the circumstances of this case the dealings between the complainant and the agent and officers of a corporation created a contract binding on the corporation.

2. A domestic corporation contracted to sell to the complainant a lot of land which it did not own, and received part of the price therefor; afterwards it was dissolved by voluntary action, under section 31 of the Corporation act (*P. L. of 1896 p. 277*), and its assets, more than sufficient to reimburse the complainant, were divided by the directors among the stockholders, without paying the complainant.—*Held*, that under sections 54 and 55 of said act the directors were personally chargeable with the debt due the complainant, and his bill in chancery could be maintained against them as trustees for discovery and relief.

On appeal from a decree advised by Vice-Chancellor Grey, whose opinion is reported in *16 Dick. Ch. Rep. 497.*

*Messrs. Carr & Stackhouse,* for the appellant.

*Mr. David J. Pancoast,* for the respondents.

The opinion of the court was delivered by

Dixon, J.

The object of this suit is to recover from the defendants, the directors of the Maple Shade Land and Improvement Company, the money paid by the complainant as the price of a plot of ground known as lot 154.

The company was organized to deal in real estate, and in June, 1896, appointed James P. Demaris as its sales agent and delivered to him a map of its property on which the said lot appeared. In fact, the company did not then own lot 154, and it is claimed by the defendants, but denied by Demaris, that he was then so informed. In July, 1896, Demaris, as agent for the company, sold the lot to the complainant and delivered to him a contract, partly printed and partly written, the terms of which bound the company to convey the lot to the complainant on payment of $275, which was payable in installments. This contract was signed by the proper officers of the company—the president and secretary—who testify, however, that they had signed the printed form in blank before the sale was made, and had given it thus to Demaris to be filled up by him in case he made a sale, while Demaris and his assistant swear that it was completely drawn before it was signed. In pursuance of this contract the complainant paid several installments to Demaris, who turned them, less his commission, over to the treasurer or president of the company and received therefor proper acknowledgments, signed by one of those officers, as for purchase-money of lot 154. After paying $250 the complainant learned that the company had sold that lot before making the contract with him, and so could not carry out the agreement, and thereupon he demanded from the defendants repayment of his money, which

was refused. The company had then been dissolved, by voluntary action, under section 31 of the "Act concerning corporations" (*P. L. of 1896 p. 277*), and the assets, which are admitted to have been sufficient to meet the complainant's claim, had been divided among the stockholders. This state of facts being shown by the pleadings and proofs, the court of chancery dismissed the bill, on the opinion of Vice-Chancellor Grey that the sole basis of suit charged in the bill was a fraudulent contrivance on the part of the company to cheat the complainant by falsely pretending to own lot 154, which charge was not sustained by the testimony.

We think the complainant is not so restricted. The bill explicitly charges the directors with breach of trust in refusing and neglecting to apply the assets of the company to the payment of debts upon its dissolution, according to the statute, and on that basis seeks discovery of the assets and of the disposition made of them, and prays that the directors may be decreed to pay the complainant's debt in case such misappropriation of assets appears. The complaint thus framed rests upon sections 54 and 55 of the Corporation act, above cited, which declare that on the dissolution of any corporation the directors shall be trustees thereof, with full power to settle its affairs, collect the outstanding debts, sell and convey the property, and divide the moneys and other property among the stockholders, *after paying its debts,* so far as such money and property will enable them, and that the directors thus made trustees shall be suable in their individual capacities for debts owing by the corporation, and be jointly and severally responsible for such debts, to the amount of the moneys and property of the corporation which shall come to their hands as such trustees. To establish a breach of the trust thus imposed, and to ascertain the measure of responsibility incurred by such breach, the jurisdiction of chancery is peculiarly appropriate.

It remains to determine whether the debt has been proved.

We think the general terms in which the company delegated to Demaris authority to sell, the form of the written contract expressed as being made by the company with the complainant for the sale of lot 154 and signed by the company's president

and secretary, whether before or after it was filled up, and the receipt of several installments of the price by the company's treasurer and president, with notice that the installments had been paid by the complainant for lot 154, preclude the company from contending that it was not bound by the agreement.  Remembering that the ordinary business of the company was the sale of lots, it is difficult to see what more could be required to constitute such a contract with it, than that its agent should negotiate the sale on its behalf, its administrative officers should execute a written agreement for the sale, and its financial officers should receive the price.

It also appears that the reception by Demaris of the several installments was within the scope of his authority as agent of the company, for the secretary testifies that "Mr. Demaris was our recognized agent, in good standing with us," and the president testifies that Demaris' duty was "to notify us of the sale of the lot or lots, and he was to make a weekly return to us of the money he received, less his commission."

This testimony clearly indicates that payments to Demaris of the price of lots sold by him as agent of the company were payments to the company.

Our conclusion therefore is that the decree appealed from should be reversed, and a decree be rendered that the complainant is entitled to recover of the individual defendants the principal of $250 and interest on the several installments from the time of their payment to Demaris.

*For reversal*—VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES—12.

*For affirmance*—VROOM—1.